**\*\*NOT FOR PUBLICATION\*\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| DAVID BENELI, *individually and on behalf of all others similarly situated*, | : : : | Civ. Act. No. 16-2737 |
| Plaintiff, | : : | |
| v. | : : | |
| BCA FINANCIAL SERVICES, INC., | : : | **OPINION** |
| Defendant. | : : | |

### WOLFSON, United States District Judge:

Before the Court are (i) the Joint Motion for Final Approval of Class Settlement Agreement and Release, filed by Plaintiff David Beneli ("Plaintiff") and Defendant BCA Financial Services, Inc. ("Defendant"), and (ii) the Motion for an Award of Attorney Fees and Reimbursement of Expenses filed by Plaintiff, through counsel Marcus Zelman LLC. This settlement will resolve all claims asserted against Defendant BCA Financial Services, Inc. For the reasons set forth below and on the record at the hearing held on January 12, 2018, the parties' joint motion for final approval of settlement is granted, the Court certifies the proposed settlement class, the Court designates Plaintiff's counsel as class counsel, and the Court approves the final settlement fund of $10,000.00 as well as an award of $1,500 to Plaintiff. Plaintiff's motion for an award of attorney fees and reimbursement of expenses is also granted, and Class Counsel, Marcus Zelman LLC is

awarded a combined $15,000 in fees and expenses, to be paid by Defendant BCA separate and apart from the settlement fund.

## I. FACTUAL BACKGROUND & PROCEDURAL HISTORY

On May 13, 2016, Plaintiff, individually and on behalf of a class, filed the above-captioned class action lawsuit, which alleges that BCA violated the Fair Debt Collection Practices Act, 15 U.S.C. §§1692, *et seq.* ("FDCPA"), by, *inter alia*, sending consumers written collection communications that contained the consumer's account number visible through the glassine window in the envelope in which the communication was mailed. On June 9, 2016, BCA filed its Answer and affirmative defenses denying any wrongdoing.

The initial conference in this matter was held on August 19, 2016. Shortly after, the parties began engaging in settlement discussions. In the October 19, 2016 Pretrial Scheduling Order, Magistrate Judge Lois H. Goodman stayed formal discovery to enable the parties to explore settlement. The parties exchanged informal, exploratory discovery, and were able to reach a settlement in principal. A dispute as to the net worth of the Defendant remained, so the Plaintiff conducted confirmatory discovery which included deposing a corporate representative of BCA. After which time, the parties were able to reach an agreement to settle the claims of the Plaintiff and Settlement Class, which Agreement has been filed with the Court.

The Court preliminarily approved the Agreement on June 5, 2017, and approved an amendment to the Agreement on August 3, 2017. The Court preliminarily certified a settlement class of 2,612 members, consisting of:

> All New Jersey consumers who were sent a collection letter from BCA, during the time period of May 13, 2015 to May 13, 2016, in an envelope with a glassine window, in which the consumer's reference number assigned by BCA was visible through the glassine window of the enclosing envelope.

The Court also preliminarily approved Ari Marcus and Yitzchak Zelman of Marcus & Zelman LLC as class counsel.

Notice of the settlement of this action was mailed by first class U.S. Mail to Settlement Class members on or before July 5, 2017. Twenty-nine (29) envelopes were returned by the United States Postal Service, of which nine (9) were returned by the United States Postal Service with a forwarding address, and were subsequently re-mailed. Pursuant to the Agreement, class members had forty-five (45) days after the mailing of the notice to exclude themselves from or object to the proposed settlement. No settlement class members have opted out or objected to the proposed settlement.

## III. TERMS OF SETTLEMENT

The Court previously considered the terms of the Agreement in entering the Preliminary Approval Order, which are as follows:

> (a) BCA will create a class settlement fund of $10,000.00 ("Class Recovery"), which the Class Administrator, First Class, Inc. will distribute *pro rata* among those Settlement Class Members who do not exclude themselves ("Claimants"). Claimants will receive a *pro rata* share of the Class Recovery by check. The shares of any of the Settlement Class Members who cannot be located because the Notice has been returned as "undeliverable" will be donated as described in paragraph (c) below. Checks issued to Claimants will be void sixty (60) days from

3

the date of issuance. If any portion of the Settlement Class Recovery remains after the void date on the Claimants' checks, these remaining funds will be distributed pursuant to paragraph (c) below.

(b) BCA shall pay $1,000.00 to Plaintiff for his statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(B)(i), plus $500.00 in recognition for his services to the Settlement Class.

(c) The shares of any of the Settlement Class Members who cannot be located and any checks that have not been cashed by the void date will be donated as a *cy pres* award to a charitable organization. The Parties propose that the *cy pres* award be donated to Legal Services of New Jersey, and that the award will be expressly earmarked for the benefit of New Jersey consumers. The Parties' selection of the forgoing *cy pres* recipient is subject to the Court's approval at the time of the final fairness hearing.

Agreement, ¶ 12 [ECF No. 19-1]. Of the 2,612 Settlement Class members who were sent notice, none have objected to or asked to be excluded from the Settlement. Accordingly, each Settlement Class member will receive three dollars and eighty-two cents ($3.82), which represents their share of the monetary benefits under the Agreement, and any monies set aside for those class members who the administrator was unable to locate, will be donated as a *cy pres* award to Legal Services of New Jersey.

The Agreement also provides in relevant part that:

BCA agrees to pay Plaintiff's reasonable attorneys' fees and costs as provided under 15 U.S.C. § 1692k in accordance with a fee petition to be submitted by Settlement Counsel to the Court . . . . The award of fees, costs, and expenses to Class Counsel shall be in addition and shall not in any way reduce the settlement amounts to be provided to the Settlement Class Members. Upon payment of the costs and fees awarded by the Court to Class Counsel, BCA shall have no further obligation with respect to Class Counsels' fees, costs, and expenses . . . .

Agreement, ¶ 13 [ECF No. 19-1].

## IV. JURISDICTION

This Court has subject-matter jurisdiction over Plaintiffs' claims under 28 U.S.C. § 1331, 15 U.S.C. § 1692 et seq., and 28 U.S.C. § 2201. The Court has personal jurisdiction over defendants, plaintiffs, and all other Class Members. "In the class action context, the district court obtains personal jurisdiction over the absentee class members by providing proper notice of the impending class action and providing the absentees with the opportunity to be heard or the opportunity to exclude themselves from the class." *In re Prudential Ins. Co. of Am. Sales Practices Litig.,* 148 F.3d 283, 306 (3d Cir. 1998).

## V. CLASS CERTIFICATION

In order to approve a class settlement agreement, "a district court must determine that the requirements for class certification under Federal Rule of Civil Procedure 23(a) and (b) are met and must determine that the settlement is fair to the class under Federal Rule of Civil Procedure 23(e)." *In re Insurance Brokerage Antitrust Litigation*, 579 F.3d 241, 257-58 (3d Cir. 2009); *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 341 (3d Cir. 2010). ("a district court first must determine that the requirements for class certification under Rule 23(a) and (b) are met."). The Third Circuit has consistently observed that "Rule 23 is designed to assure that courts will identify the common interests of class members and evaluate the named plaintiffs' and counsel's ability to fairly and adequately protect class interests." *In re Comm. Bank of N. Va.,* 622 F.3d 275, 291 (3d Cir. 2010) (quoting *In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation,* 55 F.3d 768, 799 (3d Cir. 1995) (alterations omitted). "The requirements of

[Rule 23] (a) and (b) are designed to insure that a proposed class has 'sufficient unity so that absent class members can fairly be bound by decisions of class representatives.'" *In re Prudential Ins. Co.*, 148 F.3d at 309 (quoting *Amchem*, 521 U.S. at 621).

Under Rule 23(a), the prerequisites to class certification are:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class

*Fed. R. Civ. P.* 23(a); *see also Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 613 (1997). "Upon finding each of these prerequisites satisfied, a district court must then determine that the proposed class fits within one of the categories of class actions enumerated in Rule 23(b)." *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 296 (3d Cir. 2011).

Certification pursuant to Rule 23(b)(3), applicable in cases like the one presently before the Court in which Plaintiffs seek monetary compensation, is permitted where

> (1) "questions of law or fact common to class members predominate over any questions affecting only individual members," and
>
> (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

*Fed. R. Civ. P.* 23(b)(3); *see Collins v. E.I. DuPont de Nemours & Co.,* 34 F.3d 172, 180

(3d Cir. 1994); *Amchem*, 521 U.S. at 618 ("Among current applications of Rule 23(b)(3),

the 'settlement only' class has become a stock device"). The "factual determinations

necessary to make Rule 23 findings must be made by a preponderance of the evidence. In

other words, to certify a class the district court must find that the evidence more likely

than not establishes each fact necessary to meet the requirements of Rule 23." *In re*

*Insurance Brokerage*, 552 F.3d at 258 (citations and internal quotations omitted).

Accordingly, "[c]lass certification is proper only if the [] court is satisfied, after a

rigorous analysis, that the prerequisites of Rule 23 are met." *Id.* (internal quotation marks

omitted).

      "Even if it has satisfied the requirements for certification under Rule 23, a class

action cannot be settled without the approval of the court and a determination that the

proposed settlement is fair, reasonable and adequate." *In re Prudential Ins. Co.*, 148 F.3d

at 316 (internal quotation marks omitted); *see Fed. R. Civ. P.* 23(e)(2) (stating that a

district court may approve a proposed settlement "only after a hearing and on finding that

it is fair, reasonable, and adequate"). In *In re Insurance Brokerage* the Third Circuit

affirmed the applicability of nine factors, established in *Girsh v. Jepson*, 521 F.2d 153,

157 (3d Cir. 1975), which are to be considered when determining the fairness of a

proposed settlement. "In cases of settlement classes, where district courts are certifying a

class and approving a settlement in tandem, they should be 'even more scrupulous than

usual when examining the fairness of the proposed settlement.'" *In re Nat'l Football*

*League Players Concussion Injury Litig.*, 821 F.3d 410, 436 (3d Cir. 2016), *as amended* (May 2, 2016) (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534 (3d Cir. 2004)). However, "if a fairness inquiry under Rule 23(e) controlled certification, eclipsing Rule 23(a) and (b), and permitting class designation despite the impossibility of litigation, both class counsel and court would be disarmed." *Id.* at 621. Thus, it is important to "apply[] the class certification requirements of Rules 23(a) and (b) separately from [the] fairness determination under Rule 23(e)." *In re Prudential Ins. Co.*, 148 F.3d at 308.

Finally, as the Supreme Court has observed, when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial. But other specifications of [Rule 23] -- those designed to protect absentees by blocking unwarranted or overbroad class definitions -- demand undiluted, even heightened, attention in the settlement context." *Amchem*, 521 U.S. at 620.

The parties have stipulated, for settlement purposes only, to the following Rule 23(b)(3) class:

> All New Jersey consumers who were sent a collection letter from BCA, during the time period of May 13, 2015 to May 13, 2016, in an envelope with a glassine window, in which the consumer's reference number assigned by BCA was visible through the glassine window of the enclosing envelope.

## A. Rule 23(a) Factors

The Court first determines whether Plaintiffs have satisfied the prerequisites for maintaining a class action as set forth in Rule 23(a).

## 1. Numerosity

Fed. R. Civ. P. 23(a)(1) requires the class be "so numerous that joinder of all members is impracticable." With respect to numerosity, a party need not precisely enumerate the class members to proceed as a class action. *In re Lucent Tech. Inc., Sec. Litig.*, 307 F. Supp. 2d 633, 640 (D.N.J. 2004). "No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001) (citing 5 James Wm. Moore et al., Moore's Federal Practice S 23.22[3][a] (Matthew Bender 3d ed. 1999)). "Impracticability does not mean impossibility, but rather that the difficulty or inconvenience of joining all members of the class calls for class certification." *Weikel v. Tower Semiconductor, Ltd.*, 183 F.R.D. 377, 388 (D.N.J. 1998) (citation omitted).

Here, there were 2,612 individuals who met the Class definition each of whom were sent direct notice of the settlement via U.S. Mail, pursuant to the Order. The number of Class members in this case plainly satisfies the numerosity requirement of Rule 23(a)(1).

## 2. Commonality

Commonality requires that "there are questions of law or fact common to the class." *Fed. R. Civ. P.* 23(a)(2). The threshold for establishing commonality is straightforward: "[t]he commonality requirement will be satisfied if the named plaintiffs share at least *one* question of fact or law with the grievances of the prospective class." *In*

*re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 596-97 (3d Cir. 2009) (quoting

*Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994)) (emphasis added). Indeed, as the

Third Circuit pointed out, "[i]t is well established that only one question of law or fact in

common is necessary to satisfy the commonality requirement, despite the use of the plural

'questions' in the language of Rule 23(a)(2)." *In re Schering Plough*, 589 F.3d at 97

n.10. Thus, there is a low threshold for satisfying this requirement. *Newton v. Merrill*

*Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183 (3d Cir. 2001); *In re Sch.*

*Asbestos Litig.*, 789 F.2d 996, 1010 (3d Cir. 1986) (highlighting that the threshold of

commonality is not high (quotations and citations omitted)).

Moreover, this requirement does not mandate that all putative class members share

identical claims, *see Hassine v. Jeffes*, 846 F.2d 169, 176-77 (3d Cir. 1988), and that

"factual differences among the claims of the putative class members do not defeat

certification." *Baby Neal*, 43 F.3d at 56. In that regard, class members can assert a single

common complaint even if they have not all suffered actual injury; demonstrating that all

class members are subject to the same harm will suffice. *Hassine*, 846 F.2d at 177-78.

"Even where individual facts and circumstances do become important to the resolution,

class treatment is not precluded." *Baby Neal*, 43 F.3d at 56.

Here, the Settlement Class members have identical legal claims under the FDCPA,

based upon a standardized collection letter sent by BCA to Plaintiff and each Settlement

Class Member, satisfying the commonality requirement.

### 3. Typicality

Fed. R. Civ. P. 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." "The concepts of commonality and typicality are broadly defined and tend to merge, because they focus on similar aspects of the alleged claims." *Newton*, 259 F.3d at 182. "Both criteria seek to assure that the action can be practically and efficiently maintained and that the interests of the absentees will be fairly and adequately represented." *Baby Neal*, 43 F.3d at 56; *see General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982). Despite their similarity, commonality – like numerosity – evaluates the sufficiency of the class itself, and typicality – like adequacy of representation – evaluates the sufficiency of the named plaintiff. *See Hassine*, 846 F.2d at 177 n.4; *Weiss v. York Hosp.*, 745 F.2d 786, 810 (3d Cir. 1984), *cert. denied*, 470 U.S. 1060 (1985).

Typicality acts as a bar to class certification only when "the legal theories of the named representatives potentially conflict with those of the absentees." *Georgine v. Amchem Prods.*, 83 F.3d 610, 631 (3d Cir. 1996); *Newton*, 259 F.3d 183. "If the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is established regardless of factual differences." *Id.* at 184. In other words, the typicality requirement is satisfied as long as representatives and the class claims arise from the same event or practice or course of conduct and are based on the same legal theory. *Brosious v. Children's Place Retail Stores*, 189 F.R.D. 138, 146 (D.N.J. 1999); *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 923 (3d Cir. 1992)

("Factual differences will not render a claim atypical if the claim arises from the same event or practice of course of conduct that gives rise to the claims of the class members, and it is based on the same legal theory.").

To conduct the typicality inquiry, the court must examine "whether the named plaintiffs' claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class." *Beck v. Maximus, Inc.*, 457 F.3d 291, 295–96 (3d Cir. 2006).

Here, Plaintiff's claims share the same common issues of fact and law as those held by the Settlement Class members – namely, BCA mailed Plaintiff and each Settlement Class member collection letters in envelopes through the glassine window of which the consumer's account number was visible. In other words, typicality is clearly satisfied since Plaintiff's claims arise from the same course of conduct that gave rise to the claims of all other Settlement Class Members and are based on the same legal theory. Thus, the typicality requirement of Rule 23(a)(3) is met.

**4. Adequacy**

A class may not be certified unless the representative class members "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Rule 23(a)'s adequacy of representation requirement 'serves to uncover conflicts of interest between named parties and the class they seek to represent.'" *In re Pet Food Prod. Liab. Litig.*, 629 F.3d 333, 343 (3d Cir. 2010) (quoting *Amchem*, 521 U.S. at 625). Class

representatives "must be part of the class and possess the same interest and suffer the same injury as the class members." *Id.* (citation and internal quotation marks omitted).

This requirement has traditionally entailed a two-pronged inquiry: first, the named plaintiff's interests must be sufficiently aligned with the interests of the absentees; and second the plaintiff's counsel must be qualified to represent the class. *General Motors*, 55 F.3d at 800; *Newton*, 259 F.3d at 187 (same). A named plaintiff is "adequate" if his interests do not conflict with those of the Class. *In re Prudential Ins. Co.*, 148 F.3d at 312. Pursuant to Rule 23(g), adequacy of class counsel is considered separately from the determination of the adequacy of the class representatives. Both prongs of the adequacy requirement are satisfied here.

**(i) Adequacy of the Proposed Class Representative**

Plaintiff has no interests that are antagonistic to those of the members of the proposed Class and has no unique defenses from the proposed Class. Plaintiff is alleged to have suffered injury in the same manner as other class members as a result of Defendant's alleged misconduct. Plaintiff is therefore an adequate representative of the class.

**(ii) Rule 23(g) Adequacy of the Proposed Class Counsel**

Rule 23(g) requires a court to assess the adequacy of proposed class counsel. To that end, the court must consider the following: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the

action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. *Nafar v. Hollywood Tanning Sys., Inc.*, No. 06-CV-3826 DMC, 2008 WL 3821776, at *7 (D.N.J. Aug. 12, 2008).

The Court finds that Class Counsel Ari Marcus & Yitzchak Zelman of Marcus & Zelman LLC are adequate. Looking first to the work counsel have done in identifying or investigating potential claims in the action, it appears that counsel (i) interviewed the plaintiff to address the information necessary to make a professional judgment as to whether claims existed under the Fair Debt Collection Practices Act; (ii) reviewed documents provided by the Plaintiff; (iii) conducted legal research into the claims set forth in the Complaint; (iv) assisted in negotiating a class action settlement for the plaintiff and the putative class members; and (v) conducted confirmatory discovery as to the net worth of the Defendant, which included deposing the Defendant. Looking next to counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action, it appears that counsel (i) are experienced in handling complex litigation, and have been plaintiff's counsel in over seventy five (75) Fair Debt Collection Practices Act cases in the States of New York and New Jersey; (ii) have been appointed class counsel in the following matters: *Jackson v. RMB, Inc.* Civil Case No. 2:14cv2205-MF (Marcus); *Willemsen v. Professional Recovery Services, Inc.*, Civil Case No. 1:14cv6421 (Marcus); *Krady v. A-1 Collection Agency, LLC*, Civil Case No. 3:14cv7062 (Marcus); *Willis and Shvarts v. iHeartMedia, Inc.¸* Case No. 16-CH-02455 (Cook County, Illinios. (Marcus); and *Truglio v. CBE Group*, Civil Case No. 3:15-cv-

03813 (Marcus & Zelman); (iii) have been licensed to practice law in the State of New Jersey since November 2010; (iv) and have had a significant portion of their practice concentrated in the area of Consumer Protection Law involving matters involving the Fair Debt Collection Practices Act, the Fair Credit Reporting Act, and the Telephone Consumer Protection Act. Finally, looking to the final two considerations, the Court has no concern about counsel's knowledge of the applicable law, given their experience in handling previous FDCPA matters, and has no reason to doubt that Marcus & Zelman, LLC has been and will continue to be committed to devoting sufficient resources to represent the class.

## B. Rule 23(b)(3) Factors

After meeting the threshold requirements of Rule 23(a), a plaintiff must establish that the proposed class meets the requirements of Rule 23(b)(3). To certify a class under Rule 23(b)(3), the Court must find that: "[T]he questions of law or fact common to the members of the class predominate over any question affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Rule 23(b)(3) requires that "a class action [be] superior to other available methods for the fair and efficient adjudication of the controversy." *Fed. R. Civ. P.* 23(b)(3). In this case, both considerations weigh in favor of class certification.

## 1. Predominance

Here, Plaintiff satisfies the predominance and superiority criteria of Rule 23(b)(3). In determining whether common questions predominate, courts have focused on the

claims of liability against defendants. *See Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 456 (3d Cir. 1977). When common questions are a significant aspect of a case and they can be resolved in a single action, class certification is appropriate. See 7A Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d, § 1788, at 528 (1986). Here, a common issue of fact – i.e., an identical, computer-generated, collection letter mailed by BCA to Plaintiff and the Settlement Class Members in the same sized envelope – predominates over any individual issues relating to Class members. Likewise, a common issue of law – i.e., whether Defendant's letters violated the FDCPA – predominates over any individual issues relating to each Settlement Class Member. Thus, Rule 23's predominance requirement is satisfied.

**2. Superiority**

The Rule sets out several factors relevant to the superiority inquiry: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action. Essentially, the superiority requirement "asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *In re Prudential Ins. Co.*, 148 F.3d at 316 (internal citations and quotations omitted); *In re Warfarin*, 392 F.3d at 532-33.

Here, given the large number of individual lawsuits that would be required if a class were not certified, a class action presents a superior method to fairly and efficiently adjudicate all of the claims of the Settlement Class in this case, within the meaning of Rule 23(b)(3). To the extent any Settlement Class members wished to pursue any such individual claim, they were free to exclude themselves from the Settlement Class under Rule 23(b)(3). In light of the foregoing, Plaintiff has met the superiority element of Rule 23(b)(3).

Having weighed all the factors and considered all the requirements of class certification, the Court finds that it is appropriate to certify the class for settlement purposes.

## VI. ADEQUACY OF NOTICE

The Court ruled in the Preliminary Approval Order that the class-notice materials and the proposed method of dissemination (by first-class mail and publication) met the requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, and "constitute[d] the best notice practicable under the circumstances, and constitute[d] due and sufficient notice to all persons entitled to such notice." Now that notice has been provided to the Class, the Court reaffirms its earlier findings concerning the adequacy of the Notice Program.

Where, as here, the parties have sought simultaneously to certify a settlement class and settle a class action, the Court must consider Fed. R. Civ. P. 23(c)(2)'s notice requirements for class certification as well as Rule 23(e)'s notice requirements for settlement or dismissal. *See, e.g., In re Prudential Ins. Co.*, 148 F.3d at 326-27. For

classes certified under Fed. R. Civ. P. 23(b)(3), such as the Class in this action, Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  The Rule also prescribes that the notice state "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on class members under Rule 23(c)(3)."  *Id.*  Rule 23(e) is less specific, requiring only that notice of a proposed settlement be given "in a reasonable manner."  Thus, if the notice satisfies Rule 23(c), it will also satisfy Rule 23(e). *See, e.g., In re Global Crossing Sec. & ERISA Litig.,* 225 F.R.D. 436, 448 (S.D.N.Y. 2004).  The Constitution's Due Process Clause also imposes certain minimum notice requirements.  As the Supreme Court has observed, however, the "'mandatory notice pursuant to [Rule 23(c)(2)] . . . is designed to fulfill requirements of due process to which the class action procedure is of course subject.'" *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 173-74 (1974) (quoting Fed. R. Civ. P. 23, 1966 Amendment Advisory Comm. Note to Subdiv. (d)(2)). Due process considerations are therefore satisfied if the notice conforms to Rule 23(c)(2).

## A. Best Practicable Notice Methodology

Rule 23(e)(1)(B) requires the Court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or

compromise. The notice procedure sought to reach the greatest number of Class members possible.

This notice program was clearly "the best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort," *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974), and meets the requirements of Fed. R. Civ. P. 23(c) and (e) and due process. *See, e.g.*, see *Zimmer Paper Products, Inc. v. Berger & Montague, P.C.*, 758 F.2d 86, 90 (3d Cir. 1985) ("It is well settled that in the usual situation firstclass mail . . . fully satisfy[ies] the notice requirements of both Fed. R. Civ. P. 23 and the due process clause.").

## B. Sufficient Content of the Notice

The potential Class Members will have received the "best notice that is practicable under the circumstances" as required by Rule 23(c)(2) if the notice "contain[s] sufficient information to enable class members to make informed decisions on whether they should take steps to protect their rights, including objecting to the settlement or, when relevant, opting out of the class." *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 435 (3d Cir. 2016) (internal quotations omitted).

Here, the Notice detailed the Settlement and the releases that would be exchanged; summarized the history of the litigation; described the parties and the Class; discussed the settlement negotiations; detailed the Plan of Allocation; detailed the procedure for filing Proofs of Claim and provided the deadline for filing; detailed that the attorneys would be paid from moneys separate from the settlement fund; detailed the reasons for the

settlement; described Class members' right to request exclusion from the Class or appear

through personal counsel of their choosing and/or to object to the Settlement, Plan of

Allocation and/or request for attorneys' fees and reimbursement of expenses; provided

the deadlines for asserting these rights and procedures for doing so; and provided

addresses, telephone numbers and an email address where Class members could obtain

additional information. The Notice also contained a statement of the average per capita

amount that the Settlement ($3.82) and the amount that would be received by the Class

Representative, David Beneli ($1,000 for individual statutory damages plus $500 for his

service as Class Representative). Accordingly, the notice to the Class met all

requirements of Rule 23(c) and (e), and due process.

## VII. FINAL APPROVAL OF SETTLEMENT

At the outset, the Court expresses that the law encourages and favors settlement of

civil actions in federal courts, particularly in complex class actions. *In re Warfarin*, 391

F.3d at 535; *see In re General Motors*, 55 F.3d 768, 784 (3d Cir. 1995)("the law favors

settlement, particularly in class actions and other complex cases where substantial judicial

resources can be conserved by avoiding formal litigation"). Accordingly, when a

settlement is reached on terms agreeable to all parties, it is to be encouraged. *Bell

Atlantic Corp. v. Bolger*, 2F.3d 1304, 1314 n.16 (3d Cir. 1993). The Third Circuit applies

"an initial presumption of fairness in reviewing a class settlement when: (1) the

negotiations occurred at arms [*sic*] length; (2) there was sufficient discovery; (3) the

proponents of the settlement are experienced in similar litigation; and (4) only a small

fraction of the class objected." *In re Nat'l Football League*, 821 F.3d at 436 (internal

quotations omitted). This presumption applies even where, as here, "the settlement negotiations preceded the actual certification of the class . . . ." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004).

Here, the proposed settlement meets the requirements for procedural fairness. The proposed settlement was not reached until after the Parties voluntarily exchanged documents and, thereafter, substantive arm's length negotiations that took place over several months to resolve the case on a class basis. Likewise, there's no evidence of fraud or collusion as BCA has consistently denied all individual and class liability. As reflected on the Court's docket, the Parties have been well-represented by their counsel with each party having obtained enough information to make a reasonable professional judgment as to the merits of the settlement. The declaration of Class Counsel also demonstrates that he possessed sufficient ability and experience to effectively represent the class.

Nevertheless, a class action settlement may not be approved under Rule 23(e) without a determination by this Court that the proposed settlement is "fair, reasonable and adequate." *See In re Cendant*, 264 F.3d at 231; *see also Fed. R. Civ. P.* 23(e)(1)(A). The Third Circuit has on several occasions stressed the importance of Rule 23(e), noting that "the district court acts as a fiduciary who must serve as a guardian of the rights of absent class members." *In re General Motors*, 55 F.3d at 785 (citations and quotations omitted); *see also Amchem*, 521 U.S. at 623 (noting that the Rule 23(e) inquiry "protects unnamed class members from unjust or unfair settlements affecting their rights when the representatives become fainthearted before the action is adjudicated or are able to secure

satisfaction of their individual claims by a compromise") (citations omitted). However, in cases such as this, where settlement negotiations precede class certification and approval for settlement and certification are sought simultaneously, the Third Circuit requires district courts to be even "more scrupulous than usual" when examining the fairness of the proposed settlement. *See In re General Motors*, 55 F.3d at 805. This heightened standard is intended to ensure that class counsel has engaged in sustained advocacy throughout the course of the proceedings, particularly in settlement negotiations, and has protected the interests of all class members. *See In re Prudential Ins. Co.*, 148 F.3d at 317.

As this Court observed earlier, the Third Circuit has articulated a set of nine "*Girsh* factors" that courts should consider when determining the fairness of a proposed settlement:

(1) the complexity, expense and likely duration of the litigation;

(2) the reaction of the class to the settlement;

(3) the stage of the proceedings and the amount of discovery completed;

(4) the risks of establishing liability;

(5) the risks of establishing damages;

(6) the risks of maintaining the class action through the trial;

(7) the ability of the defendants to withstand a greater judgment;

(8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and]

(9) the range of reasonableness of the settlement fund to a possible recovery in

light of all the attendant risks of litigation.

*Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975) (internal quotations omitted); *see, e.g.,*

*In re Johnson & Johnson Deriv. Litig.*, 900 F. Supp. 2d 467, 479-85 (D.N.J. 2012)

(reciting and applying the *Girsh* factors). "The settling parties bear the burden of proving

that the *Girsh* factors weigh in favor of approval of the settlement." *In re Pet Food*

*Prods.,* 629 F.3d at 350. "A district court's findings under the *Girsh* test are those of

fact." *In re Nat'l Football League*, 821 F.3d at 437, *as amended* (May 2, 2016).

Since *Girsh*, the Third Circuit has held that, "because of a 'sea-change in the

nature of class actions' after *Girsh* was decided thirty-five years ago, it may be helpful to

expand the *Girsh* factors to include, when appropriate, the following non-exclusive

factors":

[1] [T]he maturity of the underlying substantive issues . . . ; [2] the existence and

probable outcome of claims by other classes and subclasses; [3] the comparison

between the results achieved by the settlement for individual class or subclass

members and the results achieved – or likely to be achieved – for other claimants;

[4] whether class or subclass members are accorded the right to opt out of the

settlement; [5] whether any provisions for attorneys' fees are reasonable; and [6]

whether the procedure for processing individual claims under the settlement is fair

and reasonable.

*In re Pet Food Prods.*, 629 F.3d at 350 (quoting *In re Prudential Ins. Co.*, 148 F.3d at 323). "Unlike the *Girsh* factors, each of which the district court must consider before approving a class settlement, the *Prudential* considerations are just that, prudential." *In re Nat'l Football League Players*, 821 F.3d at 437 (internal quotations omitted). The *Girsh* and *Prudential* factors are well established law and their continued application in the class settlement context has been reaffirmed by Third Circuit as recently as April of this year. *See In re Nat'l Football League Players*, 821 F.3d at 437.

The proposed settlement here satisfies the *Girsh* factors as well as the applicable *Prudential* considerations.

## A. Complexity, Expense, and Likely Duration of Litigation

The first <u>Girsh</u> factor captures "the probable costs, in both time and money, of continued litigation." *In re Gen. Motors*, 55 F.3d at 812. "By measuring the costs of continuing on the adversarial path, a court can gauge the benefit of settling the claim amicably." *Id.* "Settlement is favored under this factor if litigation is expected to be complex, expensive and time consuming." *In re Royal Dutch/Shell Transp. Sec. Litig.*, 2008 WL 9447623, at *17 (D.N.J. Dec. 9, 2008).

Although the facts of this case are straightforward, the likelihood of success for the class members if they proceeded to trial is uncertain. BCA has raised several defenses to the Plaintiff's individual claims, which it avers would ultimately have defeated the claims of the putative class. The remainder of the litigation would likely include additional discovery, motions for class certification and summary judgment, and trial.

Settlement eliminates any further risk and expense for the Parties. Considering the potential risks and expenses associated with continued prosecution of the case, the probability of appeals, the certainty of delay, and the ultimate uncertainty of recovery through continued litigation, the proposed settlement is fair, reasonable, and adequate. This factor supports approval.

## B. Class's Reaction to Settlement

Here, 2,612 Settlement Class members were mailed actual, direct notice, and none of them have objected or asked to be excluded from the class. The fact that there were no opt outs or objectors is persuasive evidence of the proposed settlement's fairness and adequacy. *In re Rite Aid Securities Litig.*, 269 F. Supp. 2d 603, 608 (E.D. Pa. 2003). These facts indicate a strong positive reaction by Settlement Class members to the Agreement and heavily weighs in favor of approving settlement.

## C. Stage of Proceedings and Amount of Discovery Completed

The goal of the third *Girsh* factor is to "capture[] the degree of case development that class counsel accomplished prior to settlement. Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001) (*citing General Motors,* 55 F.3d at 813). "Even settlements reached at a very early stage and prior to formal discovery are appropriate where there is no evidence of collusion and the settlement represents substantial concessions by both parties. . . . Indeed, courts in this district have approved settlements while the case was in the pre-trial stage and formal

discovery had not yet commenced." *In re Johnson & Johnson*, 900 F. Supp. 2d at 482; *accord, e.g., In re Nat'l Football League*, 821 F.3d at 436-37 ("To the extent objectors ask us to require formal discovery before presuming that a settlement is fair, we decline the invitation. In some cases, informal discovery will be enough for class counsel to assess the value of the class claims and negotiate a settlement that provides fair compensation."). Courts in this Circuit frequently approve class action settlement despite the absence of formal discovery. *See, e.g., Schuler v. Medicines Co.*, No. CV 14-1149 (CCC), 2016 WL 3457218, at *7 (D.N.J. June 24, 2016) (approving settlement prior to discovery because of counsel's investigation); *In re Johnson & Johnson*, 900 F. Supp.2d at 483 ("Even settlements reached at a very early stage and prior to formal discovery are appropriate where there is no evidence of collusion and the settlement represents substantial concessions by both parties.")

Here, Plaintiff and his counsel had a sufficient understanding of their claims and defenses in this action. Although there has been no formal discovery, Plaintiff's Counsel had ample information to evaluate the prospects for the Class and to assess the fairness of the Settlement. In this Litigation both the knowledge of Plaintiff and Plaintiff's Counsel and the proceedings themselves reached a stage where an intelligent evaluation of the strengths and weaknesses of the Class's claims and the propriety of the Settlement could be made. Here, the disputed issues between the Parties are both legal and factual in nature. As noted *supra*, the Parties voluntarily engaged discovery information and the Parties exchanged sufficient information to gauge the strengths and weaknesses of their

claims/defenses to make an informed decision about settlement. Consequently, this factor also weighs in favor of approval.

**D. Risks of Establishing Liability and Damages**

"The fourth and fifth [*Girsh*] factors survey the potential risks and rewards of proceeding to litigation in order to weigh the likelihood of success against the benefits of an immediate settlement." *In re Johnson & Johnson*, 900 F. Supp. 2d at 483 (internal quotations omitted). "By evaluating the risks of establishing liability, the district court can examine what the potential rewards (or downside) of litigation might have been had class counsel elected to litigate the claims rather than settle them." *General Motors*, 55 F.3d at 814. In making this assessment, however, "a court should not conduct a mini-trial and must, to a certain extent, give credence to the estimation of the probability of success proffered by class counsel." *In re Lucent Techs., Inc. Sec. Litig.*, 307 F. Supp. 2d 633, 644-45 (D.N.J. 2004) (internal quotations omitted). In complex cases, "[t]he risks surrounding a trial on the merits are always considerable." *Weiss v. MercedesBenz of N. Am.*, 899 F. Supp. 1297, 1301 (D.N.J. 1995).

Here, the likelihood of class members succeeding at trial is uncertain in view of BCA's steadfast arguments against liability and class certification; however, the settlement provides for a damages recovery. Additionally, Plaintiff's complaint neither alleges, nor does it appear, that any class member suffered any ascertainable actual damages as a result of BCA's conduct, and this settlement provides them with real

monetary compensation. Thus, Plaintiff submits that these factors also heavily weighs in favor of approval.

**E. Risks of Maintaining Class Certification**

The risk of obtaining and maintaining class certification through trial also supports approval of the Settlement. Plaintiffs had not yet moved for class certification at the time of the settlement. Defendants would oppose class certification if this case proceeded. "The value of a class action depends largely on the certification of the class because, not only does the aggregation of the claims enlarge the value of the suit, but often the combination of the individual cases also pools litigation resources and may facilitate proof on the merits." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 816 (3d Cir. 1995). "The prospects of obtaining and maintaining class certification, therefore, have a great impact on the range of recovery one can expect to reap from the action. *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 90–91 (D.N.J. 2001) (citations omitted). However, in *Prudential*, "the Circuit stated that '[b]ecause the district court always possesses the authority to decertify or modify a class that proves unmanageable, examination of this factor in the standard class action would appear to be perfunctory.'" *Id.* (quoting *Prudential*, 148 F.3d at 321). "The Circuit explained that '[t]here will always be a 'risk' or possibility of decertification, and consequently the court can always claim this factor weighs in favor of settlement.'" *Id.*

Here, the Class had yet to be certified and there is no guarantee of success, thus the risks favor settlement. *See Harnish v. Widener Univ. Sch. of Law*, No. 153888, 2016 WL

4363133, at *10 (3d Cir. Aug. 16, 2016) (Class certification denied based on predominance).

Moreover, even if the Class was certified for other than settlement purposes, "[t]here will always be a 'risk' or possibility of decertification, and consequently the court can always claim this factor weighs in favor of settlement." *In re Prudential Ins. Co.*, 148 F.3d at 321; *see also In re Rent-Way Securities Litigation*, 305 F. Supp. 2d 491, 506-07 (W.D. Pa. 2003) ("[A]s in any class action, there remains some risk of decertification in the event the Propose[d] Settlement is not approved. While this may not be a particularly weighty factor, on balance it somewhat favors approval of the proposed Settlement.").

**F. Defendants' Ability to Pay**

This *Girsh* factor "addresses whether Defendants could withstand a [monetary] judgment for an amount significantly greater than the [proposed] Settlement." *In re Johnson & Johnson*, 900 F. Supp. 2d at 484 (internal quotations omitted); *Cendant*, 264 F.3d at 240 (same).

The FDCPA limits class damages to the lesser of $500,000 or 1% of the debt collector's net worth. 15 U.S.C. § 1692k(a)(2)(B). Here, as a result of confirmatory discovery and settlement discussions, the parties agreed BCA will pay $10,000.00 in damages to the Settlement Class. The parties remain in dispute as to whether $10,000.00 accurately reflects 1% of the net worth of Defendant. Defendant's position is that $10,000.00 exceeds 1% of Defendant's net worth. Plaintiff believes that $10,000.00

represents 1% of the net worth. At a minimum, the Settlement Class's recovery is equal to or exceeds the maximum allowable recovery under the FDCPA.

A trial in this case would be expensive and lengthy and continued litigation, including possible appeals, could have depleted BCA's resources to pay any judgment or possible future settlement thereby making early settlement even more valuable to the proposed class members. As such, considering the uncertainties of trial and the possible difficulty in ultimately proving class liability and damages against BCA, the proposed settlement is clearly fair, reasonable, and adequate.

### G. Range of Reasonableness of Settlement Fund

"The last two [Girsh] factors evaluate whether the settlement represents a fair and good value for a weak case or a poor value for a strong case." *In re Johnson & Johnson*, 900 F. Supp. 2d at 484 (internal quotations omitted). "In conducting this evaluation, it is recognized that settlement represents a compromise in which the highest hopes for recovery are yielded in exchange for certainty and resolution and [courts should] guard against demanding to[o] large a settlement based on the court's view of the merits of the litigation." *Id.* at 484-85 (internal quotations omitted). These factors inquire "'whether the settlement is reasonable in light of the best possible recovery and the risks the parties would race if the case went to trial.'" *Pro v. Hertz Equip. Rental Corp.*, No. CIV.A. 06-3830 DMC, 2013 WL 3167736, at *5 (D.N.J. June 20, 2013) (quoting *Prudential,* 148 F.3d at 322).

The Settlement Fund consists of $10,000, which is either at or near the statutory cap on available class damages set by 15 U.S.C. § 1692k(a)(2)(B). The settlement thus represents a significant percentage, if not the entirety of the recovery that would have been available at trial.

## H. Maturity of Underlying Issues and Existence of Other Litigation

The Third Circuit suggested in *Prudential* that courts may consider such additional factors as "the maturity of the underlying substantive issues" and the existence and probable outcomes of other individual and/or class actions involving the same underlying facts. *In re Prudential Ins. Co.*, 148 F.3d at 323. Those considerations are inapposite here.

Unlike some other types of class actions (such as certain consumer and product-liability class actions), this FDCPA class action does not present particularly novel legal or factual issues that need to mature before the Court can assess the fairness and adequacy of the proposed settlement.

## I. Availability of Opt-Out Rights

The *Prudential* court held that courts may also consider the availability of opt-out rights. 148 F.3d at 323. Such rights exist here. Dissatisfied potential Class Members were free to exclude themselves from the proposed settlement if they provided notice within forty-five days of the date of mailing.

**J. Reasonableness of Attorneys' Fees**

The *Prudential* decision also authorizes consideration of the reasonableness of the plaintiffs' request for attorneys' fees. *Id.* The fee request in this case does not present any issues, because BCA agrees to pay Plaintiff's reasonable attorneys' fees and costs as provided under 15 U.S.C. § 1692k, such that the award of fees, costs, and expenses to Class Counsel shall be in addition and shall not in any way reduce the settlement amounts to be provided to the Settlement Class Members.

**K. Reasonableness of the Plan of Allocation**

Assessment of a plan of allocation of settlement proceeds in a class action under Fed. R. Civ. P 23 is governed by the same standards of review applicable to the settlement as a whole – the plan must be fair, reasonable, and adequate. *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 326 (3d Cir. 2011) (citation omitted); *Ikon*, 194 F.R.D. at 184; *Walsh*, 726 F.2d at 964 ("The court's principal obligation is simply to ensure that the fund distribution is fair and reasonable."). Courts "generally consider plans of allocation that reimburse class members based on the type and extent of their injuries to be reasonable." *Id*. at 328. In particular, pro rata distributions are consistently upheld, and there is no requirement that a plan of allocation "differentiat[e] within a class based on the strength or weakness of the theories of recovery." *Id*. These decisions acknowledge that the goal of a distribution plan is fairness to the class as a whole, taking into account the various disclosures during the Class Period and establishing a claim value based on the market's reaction to each new piece of information.

The plan of distribution in this matter, providing equal, pro rata, $3.82 payouts to each class member is reasonable.

## L. Reasonableness of Claim-Processing Procedures

The claim-processing procedures in this matter are standard and unobjectionable.

Having considered all of the *Girsh* and *Prudential* factors, this Court approves the settlement as fair and reasonable.

## VIII. ATTORNEY'S FEES

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." *Fed. R. Civ. P.* 23(h). The Fair Debt Collection Practices Act ("FDCPA") is a fee shifting statute that mandates the award of costs and reasonable attorney's fees to a prevailing party. 15 U.S.C. § 1692k(a)(3). The fee shifting provisions serves to encourage the enforcement of the FDCPA through "private attorneys general." *Graziano v. Harrison*, 950 F.2d 107, 113-14 (3d Cir. 1991).

Plaintiff David Beneli ("Plaintiff"), by and through his undersigned counsel, requests an award of $15,000.00 in attorney's fees and out-of-pocket expenses, and $1,500.00 to the named Plaintiff which shall represent $1,000.00 for his statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(B)(i), plus $500.00 in recognition for his services to the Settlement Class. Defendant has agreed to pay these directly, and not from the Settlement Fund.

Attorneys' fees are typically assessed through the percentage-of-recovery method or through the lodestar method. *In re AT&T Corp. Secs. Litig.*, 455 F.3d 160, 164 (3d

Cir. 2006). The percentage-of-recovery method applies a certain percentage to the settlement fund. *See Welch & Forbes, Inc. v. Cendant Corp.*, 243 F.3d 722, 732 n.10 (3d Cir. 2001). The lodestar method multiplies the number of hours class counsel worked on a case by a reasonable hourly billing rate for such services. *In re AT&T*, 455 F.3d at 164. A court, when approving a fee award, must first categorize the action it is adjudicating and then "primarily rely on the corresponding method of awarding fees." *In re GM Trucks Litig.*, 55 F.3d 768, 821 (3d Cir. 1995).

In this case, arising out of a fee shifting statute (the FDCPA), the lodestar method is the appropriate method for awarding fees. *Id.* ("Courts generally regard the lodestar method…as the appropriate method in statutory fee shifting cases."); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 333 (3d Cir. 1998) ("[t]he lodestar method is more commonly applied in statutory fee-shifting cases, and is designed to reward counsel for undertaking socially beneficial litigation in cases where the expected relief has a small enough monetary value that a percentage-of-recovery method would provide inadequate compensation."); *Dungee v. Davison Design & Dev. Inc.*, 674 F. App'x 153, 156 (3d Cir. 2017) ("When a court applies the lodestar method to award fees in a class action case that involves a fee-shifting statute, there is a strong presumption that the lodestar represents the reasonable fee, for class counsel's work.") (quotations omitted).

## A. Lodestar

Under the lodestar analysis, counsel fees are determined by multiplying the number of hours reasonably spent litigating the matter by counsel's hourly rate. This yields the presumptively reasonable fee. *See Hahnemann Univ. Hosp. v. All Shore, Inc.,* 514 F.3d 300, 310 (3d Cir. 2008); *Washington v. Philadelphia Court of Common Pleas,* 89 F.3d 1031, 1035 (3d Cir. 1996). As the Third Circuit held, in reviewing counsel's lodestar,

> The lodestar cross-check calculation need entail neither mathematical precision nor bean-counting. The district courts may rely on summaries submitted by the attorneys and need not review actual billing records. Furthermore, the resulting multiplier need not fall within any pre-defined range, provided that the District Court's analysis justifies the award.

*In re Rite Aid Sec. Litig.*, 396 F.3d 294, 306-07(3d. Cir. 2005) (citation and footnotes omitted).

> Because the lodestar award is de-coupled from the class recovery, the lodestar assures counsel undertaking socially beneficial litigation (as legislatively identified by the statutory fee shifting provision) an adequate fee irrespective of the monetary value of the final relief achieved for the class.

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 821 (3d Cir. 1995)

At the time of filing their motion, Class Counsel had expended 40.9 hours on this litigation, including 28.8 hours for attorney Marcus at an hourly rate of $425/hour and 12.1 hours for attorney Zelman at an hourly rate of $350/hour. Class Counsel's total fees to that point are therefore $16,475. In prosecuting this action, Class Counsel incurred expenses of $2,618.61, including $400 for the filing fee; $55 for a process server;

$1,295.78 for flights to the deposition of Defendant's representative; $43.33 for car rental to the deposition; and $824.50 for the court reporting fee for the deposition. The lodestar of Plaintiff's combined fees and expenses in this matter is therefore $19,093.61. Plaintiff requests a combined award of fees and expenses of $15,000. The lodestar multiplier in this matter is therefore 0.79 — considerably less than 1. The Third Circuit has recognized that "[m]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied...." *In re Prudential,* 148 F.3d at 341. *See In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 284-85 (3d Cir. 2009) (affirming fee award noting that lodestar multiplier was less than one).

After the filing of Plaintiff's motion, the Court requested additional affidavits from Class Counsel supporting their claimed hourly billing rates of $425/hour and $350/hour. On January 3, 2018, Counsel submitted affidavits referencing other cases in which comparable billing rates have been accepted by courts in this district and other districts in this Circuit. Counsel's affidavit also invites the Court to consider the 2015-2016 United States Consumer Law Attorney Fee Survey Report, which identifies a New Jersey mean average billable rate of $497 and median average rate of $450. Class Counsel's affidavits also provide updated hour expenditures for this matter, including 34.9 hours for attorney Marcus and 14.5 hours for attorney Zelman. Class Counsel's affidavits also indicate that the portion of the hours in these updated totals devoted to travel time to Defendant's deposition has now been subjected to a reduced rate of 50%. Accordingly, despite the now combined 49.4 hour total, Class Counsel claim only $12,975 for attorney Marcus

and $3,675 for attorney Zelman, for a total of $16,650 for 49.4 hours, compared with the previous figure of $16,475 for 40.9 hours. Class Counsel's expenses remain unchanged at $2,618.61. Class Counsel's updated fees and expenses therefore total $19,268.61. Class Counsel continue to request $15,000 in combined fees and costs. The updated lodestar multiplier in this case is therefore 0.78, remaining significantly less than 1.

Having reviewed Class Counsel's affidavits, the Court declines to rule on whether Counsel's $425/hour and $350/hour fees are reasonable, in light of the fact that Class Counsel's fee request evidences far lower actual, effective average rates. Class Counsel requests a combined $15,000 for fees and expenses, effectively $12,381.39 in fees and $2,618.61 in expenses. Class Counsel's effective, blended hourly rate is therefore $251/hour ($12,381.39 in fees / 49.4 hours). This compares with the claimed blended hourly rates of $402/hour in their original motion ($425/hour for Marcus and $350/hour for Zelman) and $337/hour in their supplementary affidavits.

Applying the lodestar method, then, the Court finds that Class Counsel's request for $15,000 in fees and costs is reasonable and warranted.

**B. *Gunter* Factors**

The Third Circuit "require[s] district courts to clearly set forth their reasoning for fee awards so that [the Circuit Court] will have a sufficient basis to review for abuse of discretion." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 301 (3d Cir. 2005), *as amended* (Feb. 25, 2005). A district court should consider seven factors when analyzing a fee award in a common fund case:

(1) the size of the fund created and the number of persons benefitted;

(2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel;

(3) the skill and efficiency of the attorneys involved;

(4) the complexity and duration of the litigation;

(5) the risk of nonpayment;

(6) the amount of time devoted to the case by plaintiffs' counsel; and

(7) the awards in similar cases.

*Rite Aid*, 396 F.3d at 301 (citing *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000). This list is not exhaustive. In *Prudential*, the Third Circuit noted three other factors that may be relevant and important to consider: (1) the value of benefits accruing to class members attributable to the efforts of class counsel as opposed to the efforts of other groups, such as government agencies conducting investigations, *Prudential*, 148 F.3d at 338; (2) the percentage fee that would have been negotiated had the case been subject to a private contingent fee agreement at the time counsel was retained, *Id.* at 340; and (3) any "innovative" terms of settlement, *Id.* at 339. The fee

award reasonableness factors "need not be applied in a formulaic way" because each case is different, "and in certain cases, one factor may outweigh the rest." *Rite Aid*, 396 F.3d at 301 (quoting *Gunter*, 223 F.3d at 195 n.1). The Court may give some of these factors less weight in evaluating a fee award. *See In re Cendant*, 264 F.3d at 283; *Prudential*, 148 F.3d at 339. Moreover, the analysis of the *Gunter* factors overlaps with the *Girsh* factors used to assess the appropriateness of the settlement. In that regard, the Court will refer to its earlier findings when reviewing this fee application.

**1. The Fund Is Substantial and Confers a Benefit Upon The Class Members**

The first *Gunter* factor "consider[s] the fee request in comparison to the size of the fund created and the number of class members to be benefitted." *Rowe v. E.I. DuPont de Nemours & Co.*, 2011 WL 3837106, at *18 (D.N.J. Aug. 26, 2011). That is because the sheer magnitude of damages has a heavy impact on the amounts defendants are willing to pay to settle their liability.

The proposed Settlement is favorable to the Settlement Class, and Participating Class Members will receive an immediate benefit, in the form of notice and direct monetary payments. The settlement is substantial and favorable to the Class because it arguably constitutes the maximum possible recovery capped by statute. Up to 2,612 class members will benefit from the Settlement Fund of $10,000, in the amount of roughly $3.82 each. *See* Marcus Decl. at19. Further, the Notice, which was sent to all Class Members, advised individuals of certain of their rights under the FDCPA. Thus, aside

from the monetary benefit, all Class Members benefitted from Class Counsel's efforts. In short, Class Counsel have conferred a real benefit to the Settlement Class.

## 2. Absence of Objection to the Fee Request

Here, Class Counsel have received no objections or opt outs. The Class Notice, which was mailed to the last known address of the Settlement Class Members, informed the members of the Settlement Class that, *inter alia*, that Class Counsel would request fees not payable from the Settlement Fund. The Class Notice also advised all potential Settlement Class Members of the option and process of objecting to any aspect of the proposed Settlement.

As numerous district courts have held, the dearth of objections "strongly supports approval of the requested fee." *In re Flonase Antitrust Litig*., No. 08-cv-3149, 2013 WL 2915606, at *7 (E.D. Pa. June 14, 2013); *see also In re Schering-Plough Corp. Enhance ERISA Litig*., No. 08-cv-1432, 2012 WL 1964451, at *6 (finding the "lack of objections to the requested attorneys' fees supports the request"); *Moore v. Comcast Corp.*, No. 08-cv-773, 2011 WL 238821, at *5 (recognizing as significant that "not one member of the class ha[d] filed an objection to the settlement" despite the fact that notice was mailed to 35,360 class members). *See* Marcus Decl. at 20. The absence of the same strongly supports approval of Class Counsel's requested fee award. *See Barel v. Bank of Am.*, 255 F.R.D. 393, 404 (E.D. Pa. 2009)(in approving fee request, stating "[i]mportantly, there were no objections").

The lack of any negative feedback after notice suggests that the Class generally and overwhelmingly approves of the settlement. *See Varacallo v. Mass. Mutual Life Ins. Co.*, 226 F.R.D. 207, 237-38 (D.N.J. 2005) (finding exclusion and objection requests of .06% and .003%, respectively, "extremely low" and indicative of class approval of the settlement).

**3. Class Counsel Prosecuted This Action With Skill And Efficiency**

Class Counsel's skill and efficiency is "measured by the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel." *Hall v. AT&T Mobility LLC*, No. CIV.A. 075325 JLL, 2010 WL 4053547, at *19 (D.N.J. Oct. 13, 2010).

The Settlement obtained for Plaintiff and the Settlement Class Members would not have been achieved without the skill and experience of Class Counsel. As set forth in the Marcus Declaration, Class Counsel are experienced and well versed in consumer class action litigation. *See* Marcus Decl. at 2. Indeed, in this District, the attorneys comprising Class Counsel previously served as class counsel in FDCPA class actions including *Jackson v. RMB, Inc.*, No. 14-cv-02204-MF (D.N.J 2015), *Krady v. A-1 Collection Agency, LLC* No. 14-cv-7062-TJB (D.N.J. 2016), *Willemsen v. Professional Recovery Services, Inc.* 14-cv-6421 JHR-AMD (D.N.J. 2016), *O'Brien v. Waldman & Kaplan, P.A.*

15-cv-7429 BRM-LHG (D.N.J. 2017), and *Truglio v. CBE Group* No. 15-cv-3813 (D.N.J 2017) along with several other FDCPA matters in other circuits. *See* Marcus Decl. at 2.

In prosecuting the Lawsuit, Class Counsel engaged in discovery, a deposition, briefing and settlement negotiations with Defendant. *See* Marcus Decl. The success of the settlement itself speaks to the skill and efficiency of Class Counsel. *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 132 (D.N.J. 2002) ("'the single clearest factor reflecting the quality of class counsels' services to the class are the results obtained'") (*quoting Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 149 (E.D. Pa. 2000)).

Moreover, the quality and vigor of opposing counsel is also important in evaluating the services rendered by Class Counsel. *See, e.g., Ikon*, 194 F.R.D. at 194; *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985) ("The quality of opposing counsel is also important in evaluating the quality of plaintiffs' counsels' work."), aff'd, 798 F.2d 35 (2d Cir. 1986). Here, Defendants were represented by able counsel in Fineman, Krekstein & Harris, PC. Thus, the fact that Class Counsel achieved this Settlement for the Class in the face of formidable legal opposition further evidences the quality of their work.

## 4. The Complexity, Expense, and Likely Duration of Litigation Weigh in Favor of the Court's Award

The fourth *Gunter* factor is intended to capture "the probable costs, in both time and money, of continued litigation" and favors the requested fee. *See In re General Motors*, 55 F.3d at 812 (*quoting Bryan v. Pittsburgh Plate Glass Co.*, 494 F.2d 799, 801 (3d Cir. 1974)).

42

Many hours of effort were expended in investigating Plaintiff and the Settlement Class's claims, discovery, preparing for and conducting a deposition, and subsequent settlement negotiations. This Lawsuit involves additional risks, with arguably no additional benefit to the Settlement Class given the fact that the FDCPA has a statutory cap in damages. That Class Counsel was able to receive the statutory maximum recovery in this case, and an amount that the Defendant contests is above the statutory maximum recovery. Had the Lawsuit not settled, Class Counsel was prepared to devote substantial additional time and effort to pressing the Settlement Class' claims, including invariably contested class certification and summary judgment motions.

**5. Class Counsel Undertook the Risk of Non-Payment**

Class Counsel undertook this action on an entirely contingent fee basis, taking the risk that the litigation would yield no or very little recovery and leave it uncompensated for its time, as well as for its out-of-pocket expenses. Courts across the country have consistently recognized that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees. *In re Schering-Plough Corp. Enhance Sec. Litig.*, No. CIV.A. 08-2177 DMC, 2013 WL 5505744, at *28 (D.N.J. Oct. 1, 2013).

**6. Class Counsel Spent Significant Time Investigating and Litigating the Case**

The sixth Gunter factor looks at counsel's time devoted to the litigation. Gunter, 223 F.3d at 199. This factor is usually considered with the lodestar to look at reasonableness of counsel's requested fee. I have reviewed the affidavits in this case and find the 40.9 hours spent prosecuting this Lawsuit on behalf of Plaintiff and the

Settlement Class to be significant. *See* Marcus Decl. at 23. The hours spent were devoted to, *inter alia*, work that was necessary to ultimately settle this matter. Indeed, it took months of additional settlement negotiations between counsel, including numerous conference calls and the exchange and revisions of numerous draft settlement documents, before the Settlement could be agreed to by all Parties. *See* Marcus Decl. at 10.

Moreover, the hours expended by Class Counsel does not include the work Class Counsel will expend overseeing the Settlement administration, including the distribution of the Settlement's proceeds. This additional work represents a material portion of time that counsel will spend for the Settlement Class that is not reflected in the lodestar calculation reflected above. *See, e.g., In re Merck & Co., Inc. Vytorin ERISA Litig.*, No. 08-cv-285, 2010 WL 547613, at *11 (noting "the time dedicated and expenditures incurred do not include costs that will arise immediately in the future, such as the settlement hearing conducted before this Court").

Accordingly, the number of hours devoted by Class Counsel to this Lawsuit supports the requested fee award.

**7. The Court's Award Is Consistent With Awards in Similar Cases**

*See Good v. Nationwide Credit, Inc.,* 314 F.R.D. 141 (E.D. Pa. 2016)(In FDCPA case, court approved $125,000 in negotiated attorney's fees and costs separate and apart from settlement fund representing the maximum statutory recovery, noting that "[e]ven if the Court were to approve less than the $125,000 negotiated amount, the class would not gain a greater recovery."); *Magness v. Walled Lake Credit Bureau, LLC, et al*, No. 12-cv-

06586)(awarding $220,000 in attorney's fees on an FDCPA settlement fund of $500,000.00).

Indeed, courts commonly award attorney's fees in FDCPA cases which, unlike here, far exceed the amount of the settlement fund. *See Volyansky v. Hayt, Hayt & Landau, et al,* No. 13-cv- 03360 (E.D. Pa.)(awarding $91,500.00 in attorney's fees where settlement fund was $7,500.00); *Weissman v. Gutworth*, No. 14-cv-00666, 2015 WL 3384592, (D.N.J., May 26, 2015) (awarding $20,000.00 in attorney's fees on an FDCPA settlement fund of $4,400), *citing e.g., Harlan v. Transworld Sys., Inc*., No. 13-cv-5882, 2015 WL 505400, at *11 (E.D.Pa. Feb.6, 2015) (finding attorneys' fees and costs of $44,450.00 reasonable where common fund was $22,900.00). Given that Class Counsel here has obtained such a large recovery here, and seeks fees separate and apart from the settlement fund, Class Counsel's fee request is imminently reasonable.

**B. Class Counsel's Expenses Were Reasonable and Necessary to Litigate the Action**

In the event of a successful enforcement action, the FDCPA mandates the award of "the costs of the action" to plaintiff's counsel. *Gsell v. Rubin & Yates, LLC*, No. 2:13-cv-05723, 2014 U.S. Dist. LEXIS 123937 *21 (E.D. Pa. Sept. 4, 2014) citing 15 U.S.C. § 1692k(a)(3). In prosecuting this Lawsuit, Class Counsel have incurred $2,618.61 in expenses. See Marcus Decl. at 26. These expenses reflect the costs typically associated with litigating these types of claims. Although many of these expenses were incurred more than a year ago, Class Counsel is seeking reimbursement of the actual expenses and has not made any upward adjustment. Notably, this expense request is factored into the combined $15,000 fee request.

**C. Plaintiff is Entitled to an Incentive Award**

"Incentive awards are not uncommon in class action litigation and particularly where ... a common fund has been created for the benefit of the entire class. The purpose of these payments is to compensate named plaintiffs for the services they provided and the risks they incurred during the course of class action litigation, and to reward the public service of contributing to the enforcement of mandatory laws." *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 333 n. 65 (3d Cir. 2011) (quotations omitted)

Here, Mr. Beneli prosecuted his claims on behalf of the Settlement Class. He was engaged during the litigation process and provided valuable assistance to Class Counsel. This assistance included: (1) submitting to interviews with Class Counsel; (2) providing Class Counsel with documents and information; (3) participating in conferences with

Class Counsel; and (4) conferring with Class Counsel regarding the parameters of any proposed settlement. *See* Marcus Decl. at 34-36. These are the kinds of activities that warrant reimbursement for class representatives for their lost wages and business opportunities. *ScheringPlough*, 2013 WL 5505744, at *56 (reviewing pleadings, corresponding with Class Counsel, and preparing for and attending mediation); *In re Par Pharm. Sec. Litig.*, No. CIV.A. 06-3226 ES, 2013 WL 3930091, at *11 (D.N.J. July 29, 2013) (similar); *Schuler*, 2016 WL 3457218, at *11 (reviewed filings, conferred with class counsel, remained apprised about the case and the company); *Yedlowski v. Roka Bioscience, Inc.*, No. 14-CV-8020-FLW-TJB, 2016 WL 6661336, at *23 (D.N.J. Nov. 10, 2016) (same).

Accordingly, and in recognition of the substantial benefit he conferred on the Settlement Class and his efforts generally, a modest Case Contribution Award of $500 above his statutory damage of $1,000 to Plaintiff is entirely appropriate. This request is in-line with similar enhancement awards in analogous actions. *See, e.g., Smith v. First Union Mortgage Corp.,* No. 98-cv-5360, 1999 U.S. Dist. LEXIS 18299 (E.D. Pa. Dec. 1, 1999) (approving incentive award of $7,500 to two class representatives in an FDCPA class Action settlement); *Bonett,* 2003 U.S. Dist. LEXIS 9757, *23 (award of $4,000 to class representative to compensate her for "her service to the Class"); *see also Barel v. Bank of Am.*, 255 F.R.D. 393, 404 (E.D. Pa. 2009) (awarding $10,000 to named plaintiff in FCRA class litigation). As with the other requests, no Settlement Class Member has

objected to Plaintiff's requested Case Contribution Award. Importantly, this award is not being paid from and does not dilute the Settlement Fund.

## IX. CONCLUSION

The Court therefore certifies the proposed settlement class, approves the proposed settlement, grants Class Counsel's fee request in amount of $15,000.00, which includes reimbursement of expenses, and grants Plaintiff David Beneli a Case Contribution Award in the amount of $500.00 plus $1,000.00 in statutory damages.

Dated: _____2/6/2018_____         /s/ Freda L. Wolfson
                                              The Honorable Freda L. Wolfson
                                              United States District Judge